UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KURT EDENBURN,

               Plaintiff,                                      Hon. Ellen S.  Carmody

v.

                                                  Case No. 1:14-cv-761

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  On September 23, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #8).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords

to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 35 years of age on his alleged disability onset date.  (Tr. 132).  He successfully completed high school and worked previously as a meter reader and appliance servicer.  (Tr. 39, 67).  Plaintiff applied for benefits on May 19, 2011, alleging that he had been disabled since July 13, 2010, due to Reiter's syndrome, back pain, degenerative disc disease, herniated discs in back, fused discs in back, back surgery, lower leg pain, arthritis in the knees, depression, anxiety, and low testosterone.  (Tr. 132-39, 177).  Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 73-131).  On January 3, 2013, Plaintiff appeared before ALJ Luke Brennan with testimony being offered by Plaintiff and a vocational expert.  (Tr. 30-72).  In a written decision dated March 15, 2013, the ALJ determined that Plaintiff was not disabled.  (Tr. 13-24).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-6).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

3

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

   The ALJ determined that Plaintiff suffers from: (1) disc herniation, status post lumbar fusion; (2) multiple small thoracic disc herniations; (3) degenerative disc disease; (4) Reiter's syndrome;[2] (5) obesity; (6) depressive disorder; and (7) anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-19).

   With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can lift/carry 10 pounds; (2) during an 8-hour workday, he can sit for 6 hours and stand/walk for 2 hours; (3) he requires the use of a hand held assistive device in his dominant right upper extremity for walking across uneven terrain or when ambulating 15 minutes or longer at a time; (4) he can use his non-dominant upper extremity to carry small objects, ledgers, or files; (5) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (6) he can occasionally balance, stoop, kneel, crouch, and crawl; (7) he should avoid bending or twisting at the waist; and (8) he is able to perform 1-2 step tasks. (Tr. 19).

   The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a

---

  [2] Reiter's syndrome "is a type of reactive arthritis that happens as a reaction to a bacterial infection in the body." *See* Reiter syndrome, available at https://umm.edu/health/medical/altmed/condition/reiter-syndrome (last visited on October 5, 2015). For "most people, symptoms go away in 2 to 6 months." *Id.*

vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 11,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 65-69). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.          **Treating Physician Doctrine**

On January 3, 2012, Dr. Brian Burdo completed a questionnaire regarding Plaintiff's ability to function. (Tr. 725-28). The doctor found that Plaintiff was limited to a greater extent than recognized by the ALJ. The ALJ afforded "partial weight" to Dr. Burdo's opinions. (Tr. 21). Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to give appropriate weight to the opinions expressed by his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long

history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v.*

7

*Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

   If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.  *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

   Dr. Burdo's opinion is largely consistent with the ALJ's RFC determination, but nevertheless differs in certain respects.  For example, the doctor reported that Plaintiff's "experience of pain or other symptoms. . .constantly. . .interfere[s] with attention and concentration needed to perform even simple work tasks."  (Tr. 726).  The doctor reported that Plaintiff would need to take "unscheduled breaks" of 45 minutes duration every 1-2 hours during the workday.  (Tr. 727).  The doctor reported that Plaintiff can "never" twist, stoop, crouch/squat, or climb ladders.  (Tr. 728).  Dr. Burdo reported that Plaintiff cannot use his arms at all to perform reaching activities and can use his hands/fingers to perform grasping, turning twisting, and fine manipulation activities only ten percent of the workday.  (Tr. 728).  Finally, the doctor reported that Plaintiff was likely to be absent from

work "more than four days per month" as a result of his impairments. (Tr. 728).

The ALJ discounted Dr. Burdo's opinions, concluding as follows:

Although Dr. Burdo is a treating physician, his opinion is not well supported by the record, including clinical narratives from the physician's own practice, delineated at length earlier in this decision. For example, in the treatment notes Dr. Burdo did not make mention of problems with the claimant's attention or concentration, and in fact, generally noted that he was well oriented and appropriate, and without obvious cognitive difficulties. Though Dr. Burdo opined the clamant had serious problems with grasping and fine manipulations, his progress notes are devoid of documented problems in this respect. Accordingly, Dr. Burdo's opinion is not supported by the record in general, or by his records specifically.

(Tr. 21).

In October 2010, Plaintiff underwent lumbar discectomy and interbody fusion surgery performed by Dr. J. Chrostopher Eyke. (Tr. 338-51). A November 11, 2010 MRI revealed "significant improvement" in Plaintiff's lumbar spine. (Tr. 364-65). On January 6, 2011, Dr. Eyke reported that Plaintiff was "neurologically intact." (Tr. 355). X-rays of Plaintiff's lumbar spine, taken February 14, 2011, revealed "a solid fusion." (Tr. 362). On April 14, 2011, Plaintiff reported to Dr. Eyke that he was "working out and has lost some weight." (Tr. 353). A January 13, 2012 examination revealed no neurologic deficits. (Tr. 587). Dr. Eyke further noted that Plaintiff "seems to be better when he gets up and moves around." (Tr. 587). A February 20, 2012 MRI revealed "a little bit of stenosis at the L2-3 level, nothing too severe." (Tr. 586). This evidence is inconsistent with the opinions identified above. Moreover, as the ALJ correctly observed, neither Dr. Burdo's treatment notes nor the treatment notes of others in his practice, support the opinions in question. (Tr. 396-516, 599-693, 738-801). In sum, the ALJ's decision to discount Dr. Burdo's opinion is supported by substantial evidence. Accordingly, this argument is rejected.

9

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  The Court further determines that appeal of this matter would not be taken in good faith.  *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3).  A judgment consistent with this opinion will enter.


Date:  October 9, 2015                                   /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge